O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALFRED WARD, | ) | CASE NO. CV 05-02427 RZ |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

      This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, cited herein as "AR," and the parties have filed supporting memoranda. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

///

///

///

# I.
# BACKGROUND

Plaintiff applied for disability benefits on October 19, 2000, claiming he was unable to work due to schizophrenia, degenerative arthritis in his hands and knees, and a slipped disc causing chronic back pain. *See* AR 92.[1]  After denials at the initial and reconsideration stages, Plaintiff requested an administrative hearing, which he attended with his attorney on June 3, 2002. *See* AR 55-58, 60-64, 263-72 (pre-hearing denials); AR 34-52 (2002 hearing). The Administrative Law Judge denied benefits on September 17, 2002, finding that although Plaintiff had some impairments, he remained able to work. *See* AR 18-30. Plaintiff filed suit in this Court to challenge the denial of benefits, but the Court approved a stipulated remand requiring further consideration of the lay testimony of Shahbaz (or Shahboz) Baig (or Bang). *See docket in* case no. CV 03-6983 RZ; AR 288-89 (stipulation). A second administrative hearing followed on November 22, 2004 before a different Administrative Law Judge, followed in turn by another denial of benefits. *See* AR 279-85, 290. Plaintiff timely sought judicial review in this Court.

# II.
# STANDARD OF REVIEW

In providing for judicial review of the Commissioner's decision denying disability benefits, 42 U.S.C. § 405(g) states that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." Accordingly, the Commissioner's decision stands if substantial evidence supports the Administrative Law Judge's decision, and the Administrative Law Judge applied the

---

[1] Although Plaintiff's Complaint seeks both Disability Insurance Benefits and Supplemental Security Income dating back to mid-1986, he conceded at the first of two administrative hearings, and concedes again here, that the record supports only SSI, and only starting on the filing date of October 19, 2000. *Compare* Compl. ¶ 4 *with* AR 37 (2002 hearing) (Plaintiff's attorney agreeing with Administrative Law Judge's preliminary comment framing the case "really as only a Title XVI case") *and* Pl.'s Mem. at 2 (lines 15-18) (similar).

correct legal standard. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). "Substantial evidence," a term of art traditionally used when reviewing administrative decisions, carries the traditional meaning here: "more than a mere scintilla . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id., quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must review the entire record in making its determination as to whether substantial evidence supports the Commissioner's decision. *Drouin, supra.*

### III.
### RESIDUAL FUNCTIONAL CAPACITY

Plaintiff first challenges the Administrative Law Judge's assessment of his residual functional capacity in several respects.

**A.     Summary Of Underlying Decision**

Although the Administrative Law Judge found that Plaintiff had two "severe" ailments, namely depressive disorder and degenerative spinal disc disease, they were not "severe" enough, alone or in combination, to meet or equal any impairment listed in the pertinent regulations. The Administrative Law Judge found that Plaintiff had a rather hale residual functional capacity ("RFC") for the full range of medium work, including the ability to lift and carry 25 pounds frequently and 50 pounds occasionally and to sit, stand and walk for six hours in an eight-hour day. *See* AR 283-84. Based on this RFC, along with Plaintiff's age, education and work experience, the Administrative Law Judge concluded that Plaintiff was not disabled, pursuant to Medical-Vocation Rule 203.14.

**B.     Exclusion Of Mental-Impairment-Based Restrictions From The RFC**

Plaintiff claims it was error for the Administrative Law Judge not to include restrictions in the RFC based on his mental impairments. But an impairment that can be remedied or controlled by treatment or medication cannot serve as a basis for a finding of

disability. *Warre v. Commissioner of Social Security Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The Administrative Law Judge noted that Plaintiff's mental impairments were controlled with medication – when, that is, Plaintiff was medication-compliant (whereas, the opinion also noted, Plaintiff displayed mental impairment symptoms when he was *non*-compliant). *See* AR 281-83. Substantial evidence supports that observation. *See* AR 250-51; 254; 255 (progress notes for April 11, 2001 reflect Plaintiff's return to a smoking habit and his "constant desires to 'go see my friends' – which he admits will probably lead to drug use again"); 305 (refused prescribed psychotropic medications after parole), 315 (similar: "0 meds since . . . parole"); 304, 307 (refused to participate in numerous drug-abuse programs after parole); 316 (admitted using numerous drugs, including recent cocaine or crack use and alcohol; "I drink all day").

Also, as the first Administrative Law Judge observed in his 2002 opinion (incorporated by reference in the 2004 opinion under review), consultative psychiatrist Ernest A. Bagner III, M.D., found that despite Plaintiff's "alleged severe limitations in functioning" and history of depression – presumably the reasons for the examination itself – Plaintiff "revealed no evidence of cognitive deficits, perceptual disturbances or delusional disorders at this time." AR 209, *cited at* AR 26, *incorporated in latter opinion as noted at* AR 281. Dr. Bagner found that Plaintiff seemed able to groom and care for himself. More importantly in this context, Dr. Bagner found that Plaintiff was able to work, in that he could focus attention, follow multi-part commands, remember and complete simple and complete tasks, tolerate workplace stress, maintain attendance and interact properly with others. AR 209. Accordingly, excluding a mental impairment from Plaintiff's RFC was not error.

**C.    Need For "Highly Structured Program"?**

Plaintiff also asserts that it is error to judge his ability to work *generally* based on how well he performed – including compliance with medications – in a "highly structured program" such as the board and care facility where he currently spends much of

his time. Pl.'s Br. at 9. In support, Plaintiff cites *Esselstrom v. Chater*, 67 F.3d 869, 872-73 (9th Cir. 1995). That case is inapposite, for it involved a claimant with considerably worse mental impairments, namely chronic undifferentiated schizophrenia with paranoid tendencies. *Id*. at 871. So profound was Craig Esselstrom's illness that the issue in his case was whether he merited benefits under Listing 12.03(C) at step three, not whether he could perform jobs in the economy at step five. (In addition, the Court notes that the Ninth Circuit expressly stated that the group-home setting involved in *Esselstrom* "*did not have a great deal of structure*," although it did offer a "highly supportive environment." *Id.*) Inasmuch as the decision implicitly found that Plaintiff did not require a "highly structured program," such is amply supported by the record.

### D.  Consideration Of Pain Complaints

Plaintiff appears to assert that the RFC assessed fails to take into account his complaints of pain in his back, legs and feet, and he cites evidence from 1998 to 2000 documenting his complaints and medical treatments therefor. *See* Pl.'s Br. at 11-12. But substantial evidence supports the Administrative Law Judge's 2004 decision that, although Plaintiff had such pain, the post-filing-date evidence "only showed conservative treatment for back [pain]," that "a consultative internist then opined that the claimant was able to perform medium work. There are no contrary medical opinions. Absent new and contrary medical evidence, the previous ALJ decision is adopted." AR 283; *see* AR 24 (2002 decision) (summarizing medical evidence relating to Plaintiff's pain and treatment therefor). Plaintiff neither cites any such new evidence (he simply points to the old evidence), nor demonstrates that the two Administrative Law Judges' findings – that although Plaintiff had pain, he responded well to conservative treatments and remained able to perform medium work – lacked substantial evidentiary support or otherwise constituted legal error.

///

///

**E. Drug And Alcohol Abuse**

Plaintiff appears to imply that the Administrative Law Judge based his non-disability conclusion on Plaintiff's drug abuse, for he faults the opinion for failing to assess whether Plaintiff would be disabled "if he stopped using drugs or alcohol." The implied premise of this argument is faulty, however. Although the Administrative Law Judge mentioned Plaintiff's "polysubstance abuse" and remarked that such conduct could serve as grounds for denying the application, *see* AR 282-83, he neither denied the application based on drug abuse nor found or implied that the abuse contributed to Plaintiff's physical or mental ailments. Accordingly, nothing required the Administrative Law Judge to analyze whether Plaintiff would be eligible for benefits if he stopped the abuse. *See generally* 20 C.F.R. § 416.935.

## IV.
## LAY WITNESS TESTIMONY

Plaintiff argues that the Administrative Law Judge again failed to give proper consideration to the testimony of lay witness Shahbaz Baig (or Bang; the name appears in both forms in the record), described as Plaintiff's caretaker at the time of the 2002 administrative hearing – although a subsequent caretaker, Sumant Patel, apparently asserted that he had been the caretaker since 2001, *i.e.*, before the 2002 hearing. *See* AR 281, 282. Plaintiff's argument is without merit. After the prior remand directing further attention to Baig's testimony, the newly assigned Administrative Law Judge subpoenaed Mr. Baig to testify at the 2004 administrative hearing. Mr. Baig did not respond. Instead, "Sumant Patel responded to the subpoena indicating he was now the claimant's caretaker and the owner of the board and care facility that employed Mr. Bang, and that Mr. Bang no longer was the claimant's caretaker. Mr. Patel appeared and testified over no objection raised by the claimant's attorney." AR 279; *see* AR 326-27 (2004 hearing). In the ensuing opinion, the Administrative Law Judge duly summarized Mr. Baig's testimony from the prior hearing, portions of which tended to support Plaintiff's argument that he suffers from

a more serious mental ailment; summarized Mr. Patel's testimony, which, although overlapping in part with Mr. Baig's version, painted a more favorable picture of Plaintiff's mental health; and explained why Mr. Patel's account was the more persuasive, as follows:

> Mr. Patel, who has been the claimant's caretaker since 2001, described the claimant as socially active without problems interacting with others. In the prior hearing, Mr. Bang stated that the claimant was isolated and suffered mood swings, nervousness, and paranoia. He [Bang or Baig] denied evidence of the claimant's drug use.
>
> [Bang]'s testimony is inconsistent with the medical evidence. It is possible that the claimant might have exhibited those symptoms as attested to by Mr. Bang, but the medical evidence reveals that these conditions had resolved with less than a year of treatment. After 10 months of treatment, treating psychiatrist Dr. [Robert] Barker noted in May 2001 that the claimant had responded well to medications without side effects and that he was socially active. [No citation, but apparently referring to AR 254.] Recent treatment records similarly do not reveal a disabling condition; rather, [they] attest[] to continuing poly-substance abuse and refusal to attend a rehab program, and partial medical compliance. . . . When he was medically compliant, his symptoms are controlled; he reported improving symptoms and he often rated his mood as good [citation to AR 250, 256].

>Given this medical evidence, Mr. Patel's testimony describing the claimant as sociable and functioning is more convincing.

AR 282-83 (paragraph breaks added). The Administrative Law Judge provided a reasonable explanation, supported by substantial evidence, for resolving a conflict in the lay testimony.

## V.
## USE OF THE GRIDS

Finally, Plaintiff argues that the Administrative Law Judge improperly relied on the Grids at step five in finding him not disabled, in two ways. First, he reasserts his argument that it was improper to rely on the Grids to deny benefits because his mental impairments improperly were omitted from the RFC assessment. The Court rejected that argument above.

Second, Plaintiff asserts that the Administrative Law Judge failed to find that the kinds of jobs for which he is presumed qualified under the Grids actually exist in the economy. This assertion lacks merit for two reasons. First, if proof of the existence of jobs – which evidence usually would derive from vocational expert testimony – were required in every case in which the Grids indicated a "not disabled" result, then the Grids could not serve their core purpose, namely promoting efficiency and consistency of results by streamlining cases. *See Heckler v. Campbell*, 461 U.S. 458, 460-62, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983) (discussing purpose for which the Grids regulations were promulgated). "Where a claimant's qualifications correspond to the job requirements identified by a rule, *the guidelines direct a conclusion as to whether work exists that the claimant could perform.* If such work exists, the claimant is not considered disabled." *Id*. at 461 (emphasis added) (footnote omitted). Second, even if this were a pre-Grids case, the vocational expert testified that, indeed, a significant number of jobs existed in the economy

that a person with Plaintiff's characteristics (as posed by the Administrative Law Judge) could perform. AR 338-39.

## VI.
## CONCLUSION

For the foregoing reasons, the underlying decision is affirmed.

DATED: October 20, 2006

                                                        */s/ Ralph Zarefsky*
                                                RALPH ZAREFSKY
                                      UNITED STATES MAGISTRATE JUDGE